UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AUGUSTUS ROBINSON, #235216,

    Petitioner,

            CASE NO. 2:15-CV-11288
v.            HONORABLE PAUL D. BORMAN

LORI GIDLEY,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I. Introduction

  Michigan prisoner Augustus Robinson ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his two first-degree criminal sexual conduct convictions which were imposed following a jury trial in the Kent County Circuit Court.  Petitioner was sentenced, as a third habitual offender, to concurrent terms of six to 30 years imprisonment. In his pleadings, Petitioner raises claims concerning the late endorsement of two witnesses, the alleged absence of counsel during the pre-trial period, the effectiveness of trial counsel, the trial court's refusal to allow him to represent

himself, the exclusion of certain evidence, his restraint in shackles before the jury, and the trial court's factual findings regarding the use of shackles. For the reasons stated herein, the Court finds that his claims lack merit and denies the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his conduct in performing oral sex upon the 15-year-old daughter of his former girlfriend at the girl's residences in Grand Rapids, Kent County, Michigan in 2008 and 2009. Defense counsel on direct appeal summarized the trial testimony as follows:

> IT claimed to know the complaining witness, TJ, since the eighth grade. She visited TJ often and at one point slept at her house nearly every other weekend. [Trial 4/19/11, p 34-35]. IT claimed Mr. Robinson was always at the house during their visits. [Trial 4/19/11, p 37]. According to IT, she awakened one night and saw Mr. Robinson standing in the doorway of TJ's bedroom. [Trial 4/19/11, p 39-40]. Although it was dark, she claimed to know with certainty that it was Mr. Robinson in the doorway and not one of TJ's other relatives. [Trial 4/19/11, p 40-41]. She thought his conduct was "weird," but rolled over and went back to sleep. IT claimed that because she sleeps heavily, she was not aware of anything unusual happening during the rest of the night. [Trial 4/19/11, p 42-43].
>
> TJ was sixteen at the time of trial. [Trial 4/19/11, p 58]. She testified that her family once lived at a house located on Hamilton Street, and that she resided there with her mother, four brothers and Mr. Robinson. She believed she was fifteen years-old and in the eighth grade when they lived at that house. [Trial 4/19/11, p 58]. According

to TJ, she and her mother did not have a positive relationship at all during that time. [Trial 4/19/11, p 62]. She claimed that one night while her mother was out and she and IT were asleep in the same bed in her room, Mr. Robinson knelt down and tapped her on the shoulder. When she awakened, he asked her to come downstairs for a minute because he needed to show her something. [Trial 4/19/11 62-63]. TJ testified that she was not fully awake and inquired of her mother's whereabouts, but claimed that Mr. Robinson repeated his request. She claimed that he then rubbed her leg, pulled down her pants and performed oral sex on her. [Trial 4/19/11 63]. TJ did not try to alert IT (who was directly next to her), and instead pushed Mr. Robinson away. She testified that she could smell liquor on Mr. Robinson's breath, and that when he was finished he asked TJ if she liked it. [Trial 4/19/11, p 64]. According to her, he then left the room and went back downstairs. TJ did not mention the incident to her mother, based on her belief that her mother would be angry and side with Mr. Robinson, or that he would try to have another person harm her. [Trial 4/19/11, p 67, 88].

Their family eventually moved to an apartment on Hidden Creek Circle Drive. TJ expressed confusion over whether she was fifteen or sixteen at the time, but believed that the next encounter occurred the following spring, in March or May. [Trial 4/19/11, p 69]. According to her, she arrived home around six o'clock in the evening. Her mother was visiting a friend, and her younger brothers were outside playing. She claimed that she and Mr. Robinson were in the house alone, when he approached her and asked if she remembered what happened last time. TJ did not respond. Based on his request, however, she smoked marijuana with Mr. Robinson and then headed to her room to do laundry. When she turned to leave the room again, she claimed that Mr. Robinson was standing right behind her. She went to check on her brothers, but he stopped her, locked the door, picked her up, and took her to her room. Mr. Robinson forced her to lay down on the bed, removed her jeans, and performed oral sex on her again. [Trial 4/19/11, p 70-71]. She began to push him off of her because she heard her brothers ringing the doorbell. He finally let her get up and she went to let them in. [Trial 4/19/11, p 72].

According to TJ she was only compelled to tell her mother about the alleged assaults when she overheard Calandra and Mr. Robinson discussing sending her to juvenile boot camp. She was angry because Mr. Robinson was encouraging the move, and her mother was agreeing to it. She turned up her music and told her mother "I'm not the only one keepin' secrets around here." TJ began to cry and disclosed the alleged incidents to her mother at that time. [Trial 4/19/11, p 72]. Her mother ordered Mr. Robinson to leave, and the police came to the house the same night. [Trial 4/19/11, p 73]. On cross-examination, TJ admitted that she had been lying to her mother about various things, and that her mother doubted her truthfulness as a result. [Trial 4/19/11, p 76].

Calandra Jones claimed she could not recall the exact year – 2007 or 2008 -- that she and Mr. Robinson began dating. [Trial 4/19/11, p 95]. She noted that right before TJ's birthday, her daughter disclosed the alleged sexual abuse. Nevertheless, she waited ten to fourteen days before she contacted the police. [Trial 4/19/11, p 96-97, 100]. What stood out to Calandra was TJ's claim that Mr. Robinson said "I want to show you something." According to her, that was his way of indicating to Calandra that he was interested in sex. [Trial 4/19/11, p 98]. Initially, Calandra lashed out and looked at her daughter as the other woman. [Trial 4/19/11, p 99].

When she confronted Mr. Robinson with the information, she claimed he did not deny it. He merely said, "you're going to believe her." [Trial 4/19/11, p 100].

Over defense objection, the prosecution presented testimony from CJ, TJ's younger brother. The basis for the objection was that TJ and another witness, Tom Cottrell, were belatedly endorsed by the prosecution – a fact that the government readily acknowledged. [Trial 4/20/11, p 4-6]. Nevertheless, they contended that the amendment was justified given the evolving nature of Mr. Robinson's defense, which was initially based on Mr. Robinson having an alibi. (Appendix A, Motion for Admission of Late Endorsed Witnesses). They argued that because counsel attacked the reporting delay in opening argument, they needed to proffer the testimony of Cottrell as an expert witness to

rebut that contention. No excuse was offered as it related to CJ, but the Court was not persuaded that the defense should be surprised by his testimony. Ultimately, Judge Sindt agreed with the prosecution and allowed both witnesses to appear. [Trial 4/20/11, p 10-16].

According to CJ, who was twelve at the time of the trial, he recalled a day when Mr. Robinson directed he and his brothers to stop watching television and to go outside. They all complied, but CJ eventually had to use the bathroom so he headed back in. He found that the door was locked and he thus had to ring the bell. Mr. Robinson came to the door after two or three minutes, which struck him as odd since CJ did not have a key and was not accustomed to the door being locked while they were outside. [Trial 4/20/11, p 19-21].

The final prosecution witness, Tom Cottrell, testified as an expert in the field of "child sexual abuse and offender behavior," ostensibly to rebut the defense suggestion that TJ's reporting delay indicated untruthfulness. [Trial 4/20/11, p 29]. On this point, he testified that reporting is extremely common in child sexual abuse cases and stems from a variety of circumstances, including the possibility that a child feels threatened; that disclosure puts another person at risk; that they cannot anticipate the family's response; or the feeling that the child can endure it on their own. [Trial 4/20/11, p 31]. The questioning went far afield of this subject,  however, as Mr. Cottrell explained (1) why an offender would feel empowered by engaging in sex abuse in front of a third person without being discovered; (2) why a child sex abuse victim might comply with the demands of the perpetrator because of feeling threatened, complicit, or joyful about having the attention; (3) why a child sex abuse victim might respond to the behavior with defiance; (4) and why it is common for the mother of a sex abuse victim to view her daughter as "the other woman." [Trial 4/20/11, p 32-36]. He also noted that generally speaking, children are trained to follow the rules given to them by adults. [Trial 4/20/11, p 38].

Mr. Robinson elicited testimony from Chiquita Braggs on his behalf. She noted that there came a time when it was very hot in the spring or summer of 2009 when Mr. Robinson approached her in need of a place to live. He moved in with her for a period of time, and then went

on to stay with his sister in Lansing. Ms. Braggs believed that this likely occurred in June or July of 2009. [Trial 4/20/11, p 42-46]. Trial counsel asked Ms. Braggs to describe her impression of Mr. Robinson's character and the kind of person he was, and she replied that he was "a nice person for the most part." She had no concerns with him being around her adolescent girls without supervision. [Trial 4/20/11, p 46]. She offered no testimony about his character for truthfulness, peacefulness or otherwise. Nevertheless, on cross-examination, the prosecution attempted to impeach the witness's knowledge by informing her, in front of the jury, that Mr. Robinson had a past conviction for unarmed robbery. [Trial 4/20/11, p 56]. No limiting instruction was requested or received at the end of the proofs to properly instruct the jury on how to evaluate the back-door introduction of Mr. Robinson's criminal record.

Mr. Robinson's sister, Rosa Robinson, was the last witness to testify. She noted that Mr. Robinson came to stay with her twice – once to house-sit in May of 2009, and later in July of 2009 for less than a month. Thereafter, he went on to live with her sister, Lucille and remained in the Lansing area. [Trial 4/20/11, p 64].

Defense Counsel's App. Br. pp. 1-6 (footnotes omitted, edited to use minors' initials).

At the close of trial, the jury convicted Petitioner of two counts of first-degree criminal sexual conduct. The trial court subsequently sentenced him, as a third habitual offender, to concurrent terms of six to 30 years imprisonment on those convictions.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented in his habeas petition. The Michigan Court of Appeals remanded the case to the trial court to allow Petitioner

to file a motion for a new trial and for the trial court to conduct an evidentiary hearing to determine whether Petitioner was in restraints while the jury was present in the courtroom and, if so, whether any of the deliberating jurors saw them. The trial court held the evidentiary hearing and denied the motion for a new trial because the testimony of Petitioner's counsel and court personnel did not support Petitioner's claim that he was restrained in shackles in front of the jury in the courtroom. *People v. Robinson*, No. 10-02818-FC (Kent Co. Cir. Ct. Oct. 15, 2012). The Michigan Court of Appeals thereafter ruled that Petitioner's claims lacked merit and affirmed his convictions. *People v. Robinson*, No. 304878, 2013 WL 3814352 (Mich. Ct. App. July 23, 2013) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied, *People v. Robinson*, 495 Mich. 915, 840 N.W.2d 353 (2013), as was his motion for reconsideration. *People v. Robinson*, 495 Mich. 997, 845 N.W.2d 97 (2014). Petitioner also filed a petition for a writ of certiorari with the United States Supreme Court, which was denied. *Robinson v. Michigan*, _ U.S. _, 135 S. Ct. 272 (2014).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      The trial court violated Petitioner's right to a fair trial by allowing the prosecutor to add a new expert and corroborating

witness on the Friday before trial.

II.     Petitioner is entitled to a new trial where defense counsel
        provided constitutionally ineffective assistance by eliciting
        irrelevant and unnecessary character testimony and opening the
        door for the prosecution to inform the witnesses and the jury of
        Petitioner's unarmed robbery conviction.

III.    The trial court violated Petitioner's Sixth Amendment right to
        represent himself at trial when it refused to let Petitioner
        represent himself because he had not graduated from law school
        and passed the bar.

IV.     Petitioner was denied his Sixth Amendment right to effective
        assistance of trial counsel by his trial lawyer's failure to visit
        him in jail during the eight months before trial after she moved
        to withdraw.

V.      Petitioner was denied his Sixth Amendment right to effective
        assistance of trial counsel by his trial lawyer's failures
        including:

        a.     Failure to impeach TJ with her statement to police and
               preliminary examination testimony;

        b.     Failure to impeach IT with her prior statement to police
               that she and TJ were sleeping in separate beds, not in the
               same bed as they both testified at trial;

        c.     Failure to impeach IT with her prior inconsistent
               statements about the date, where she told police the
               events she witnessed happened in 2009 but testified that
               they happened in 2008;

        d.     Failure to point out to the jury the inconsistencies
               between the stories of TJ and her brother, CJ.

        e.     Failure to investigate whether TJ had a negative

urinalysis drug result during March or April 2009, to refute her testimony that she smoked marijuana with defendant the day she claimed that he assaulted her in March 2009;

f.      Failure to object when the prosecutor elicited from Calandra Jones that defendant had been incarcerated;

g.      Asking Rosa Robinson whether defendant had been in legal trouble and her replying "aggravated assault."

VI.    Petitioner was denied a fair trial in violation of the Fourteenth Amendment when the Court allowed the prosecution to present evidence that Petitioner and Calandra Jones had discussed sending TJ to a juvenile "boot camp" but would not let the defense present evidence of why.

VII.   Petitioner was denied a fair trial under the Fourteenth Amendment when he was brought before the jury in shackles.

VIII.  The trial court's findings of fact are clearly erroneous and they are not what the Michigan Court of Appeals ordered, which was to determine whether the jurors saw Petitioner in restraints.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and the shackles claim is procedurally defaulted. Petitioner has filed a reply to that answer.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v.*

*Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find to a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely

established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal

habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.  Discussion

### A.  Late Endorsement of Witnesses (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the trial court allowed the late addition of two witnesses, the expert Tom Cottrell and the victim's brother CJ.  Respondent contends that this claim lacks merit.

There is no general constitutional right to discovery in a criminal case.  *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (citing *Weatherford*).  A decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion.  *See Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D. Mich. 1999) (citing cases); *Whalen v. Johnson*, 438 F. Supp. 1198 (E.D. Mich. 1977) (it is not a fundamental error to permit a prosecutor to endorse a witness during trial even though the prosecutor previously filed an affidavit stating that the witness was not material).

A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim concluding that the trial court did not abuse its discretion in finding good cause for allowing the late endorsement of the witnesses and that Petitioner failed to establish that he was prejudiced by the court's ruling. *See Robinson*, 2013 WL 3814352 at *1.

The state court's denial of relief is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.[1]  As an

initial matter, the Court notes that it will not disturb the state court's determination

that the late endorsement of the two witnesses was proper under Michigan law.

State courts are the final arbiters of state law and federal courts do not intervene in

such decisions.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809

F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76

(2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does

not lie for perceived errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991).

Moreover, Petitioner fails to demonstrate that his trial was rendered

fundamentally unfair by the late endorsement of the witnesses.  The record

indicates that the prosecution added expert witness Tom Cottrell as a witness to

rebut a defense first raised by defense counsel during opening statements and that

both he and the victim's brother CJ were known to the defense before trial.  *See*

4/20/11 Trial Tr., pp. 4-6, 13-15.  Additionally, Petitioner fails to show that he

was prejudiced by the late addition of the witnesses.  Defense counsel turned

down the trial court's offer of an adjournment to allow her to interview the

---

[1]The Court notes that it would reach the same result under a *de novo* standard of review.

witnesses and said that she was aware of their potential testimony and prepared to proceed. *Id.* at 17. Petitioner was not deprived of exculpatory evidence nor denied the ability to prepare an adequate defense. The late addition of the two witnesses did not deprive Petitioner of a fundamentally fair trial. Habeas relief is not warranted on this claim.

**B.      Self-Representation (Habeas Claim III)**

Petitioner also asserts that he is entitled to habeas relief because the trial court refused to allow him to represent himself at trial after he expressed dissatisfaction with his appointed defense counsel. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the assistance of counsel, U.S. CONST. AMEND. VI; *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *see also Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972); and gives an indigent criminal defendant the right to the assistance of court-appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335, 343 (1963). The Sixth Amendment also grants a criminal defendant the right to self-representation if such a choice is voluntarily and intelligently made. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 153 (2000); *Faretta v. California*, 422 U.S. 806, 819 (1975); *Hill v. Curtin*, 792, F.3d 670, 677 (6th Cir. 2015) (en

banc). The right to counsel and the right to defend oneself are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *See King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006); *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2005).

A waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Faretta*, 422 U.S. at 835; *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir. 2005). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Tovar*, 541 U.S. at 92. A request for self-representation must be "clear and unequivocal" before the right to counsel may be deemed waived. *United States v.* Cromer, 389 F.3d 662, 683 (6th Cir. 2004). Additionally, a defendant who seeks to proceed *pro se* must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner told the trial court that he wanted to "fire" defense counsel, but "never requested, much less made an unequivocal request, to represent himself." *Robinson*, 2013 WL 3814352 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record confirms that while Petitioner expressed some dissatisfaction with defense counsel prior to the start of trial, he never asked to represent himself. *See* 6/1/10 Status Conf. Tr., pp. 4-9. Petitioner fails to establish that he was denied his constitutional right to self-presentation. Habeas relief is not warranted on this claim.

**C.      Effectiveness of Trial Counsel (Habeas Claims II, IV, V)**

Petitioner also asserts that he is entitled to habeas relief because trial counsel failed to sufficiently meet with him before trial and was ineffective during the course of trial. Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. Const. Am. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must

prove that counsel's performance was deficient.  This requires a showing that

counsel made errors so serious that he or she was not functioning as counsel as

guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the

petitioner must establish that counsel's deficient performance prejudiced the

defense.  Counsel's errors must have been so serious that they deprived the

petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were

"outside the wide range of professionally competent assistance."  *Id*. at 690.  The

reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at

689.  There is a strong presumption that trial counsel rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the

presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id*. at 694.  A reasonable probability is

one that is sufficient to undermine confidence in the outcome of the proceeding.

*Id*.  "On balance, the benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the

adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

With regard to the pre-trial period, Petitioner alleges that trial counsel failed to meet with him for several months before trial after she unsuccessfully moved to withdraw as counsel (due to Petitioner's threats) and that this amounted to the denial of counsel at a critical stage of the proceedings in violation of *United States v. Cronic*, 466 U.S. 648 (1984).

Citing *Cronic* and *Strickland*, the Michigan Court of Appeals denied relief on this claim. The court explained:

> In *People v. Frazier*, 478 Mich. 231, 243; 733 NW2d 713 (2007), the Michigan Supreme Court discussed the difference between the

21

ineffective assistance tests articulated in *Strickland*, 466 U.S. 668, and *Cronic*, 466 U.S. 648:

> [m]ost claims of ineffective assistance of counsel are analyzed under the test developed in *Strickland, supra*. Under this test, counsel is presumed effective, and the defendant has the burden to show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error. *Strickland, supra* at 687, 690, 694. But in *Cronic, supra* at 659–662, the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed. One of these situations involves the complete denial of counsel, such as where the accused is denied counsel at a "critical stage" of the proceedings. Id. at 659. "For purposes of distinguishing between the rule of Strickland and that of *Cronic*, [the] difference is not of degree but of kind." *Bell v. Cone*, 535 U.S. 685, 697; 122 S Ct 1843; 152 L. Ed. 2d 914 (2002).

Specifically, in *Cronic*, 466 U.S. at 658–659, the United States Supreme Court held that:

> [t]here are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.

The Supreme Court recognized that it had "uniformly found constitutional error without any showing of prejudice when counsel

was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n 25.

We recognize that the pretrial stage of a criminal proceeding is a critical stage. *People v. Dixon*, 263 Mich. App. 393, 397; 688 NW2d 308 (2004) (adopting the ruling in *Mitchell v. Mason* (On Remand), 325 F3d 732, 743 (CA 6, 2003).). Regardless, defendant fails to show that he was denied assistance of counsel during that stage. The record does not show that counsel failed to visit defendant in jail during that time. Further, the record shows some correspondence between defendant and counsel and that counsel remained engaged with the case during the pretrial stage. Accordingly, defendant has not shown he was denied the assistance of counsel during the pretrial period. *Cronic*, 466 U.S. at 658–659.

Premised on counsel's alleged failure to visit, defendant also claims counsel did not adequately investigate the case. Again, along with an absence of record evidence that counsel failed to visit him, defendant fails to show that counsel failed to prepare for trial or explain in what ways her trial preparation was inadequate. Thus, defendant has not established the factual predicate for this claim, *People v. Hoag*, 460 Mich. 1, 6; 594 NW2d 57 (1999), and fails to show that his attorney's representation fell below an objective standard of reasonableness. *Toma*, 462 Mich. at 302.

*Robinson*, 2013 WL 3814352 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Supreme Court has limited the presumed prejudice standard to three types of ineffective assistance claims: (1) complete denial of counsel; (2) government interference with the right to counsel; and (3) conflicts of interest. *See Smith v. Robbins*, 528 U.S. 259, 287

(2000) (citing *Strickland*, 466 U.S. at 692; *Cronic*, 466 U.S. at 659 & n. 25). The first category, the complete denial of counsel, encompasses both actual and constructive denials of counsel, and a constructive denial of counsel can occur when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002)). In order for *Cronic*, rather than *Strickland*, to apply, "the attorney's failure must be complete." *Bell*, 535 U.S. at 697. The distinction is between "bad lawyering" and "no lawyering," *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002), and the difference is not one of degree, but one of kind. *Bell*, 535 U.S. at 697.

In this case, trial counsel's minimal meetings with Petitioner before trial did not amount to a complete failure to represent Petitioner during the pre-trial period or provide a defense. Rather, the record shows that counsel met with Petitioner in person before his threatening behavior, *see* Prison Visitation Record, Pet. Attach. J, then continued to correspond with him and work on his case during the pre-trial period, *see* Counsel's Withdrawal Mot., Pet. Attach. Y; Kent Co. Cir. Ct. Dkt. No.

10-02818-FC, and met with him briefly before trial. Pet. Br. p. 45. The presumption of prejudice does not apply. Petitioner must therefore show that he was actually prejudiced by counsel's minimal contacts with him during the pre-trial period.

Petitioner fails to allege any facts indicating that he was prejudiced by the lack of personal visits with trial counsel (which arose from his own threatening behavior). Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).

Petitioner further asserts that trial counsel failed to sufficiently investigate his case and prepare for trial. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). In this case, Petitioner fails to explain what counsel failed to investigate during the pre-trial period and/or how further investigation would have uncovered information which would have benefitted his defense and affected the outcome at trial. As noted, conclusory allegations are insufficient to warrant habeas relief.[2]

Petitioner asserts that trial counsel was ineffective for eliciting character testimony from witness Chiquita Braggs which opened the door to the prosecutor eliciting testimony that he had been convicted of unarmed robbery. Citing the

---

[2]To the extent that Petitioner raises specific claims about counsel's performance at trial related to this issue, the Court addresses them *infra*.

*Strickland* standard, the Michigan Court of Appeals denied relief on this claim.

The court explained in relevant part:

> Here, defense counsel asked defendant's friend, Chiquita Braggs, for her opinion of defendant's character. Defense counsel successfully elicited that Braggs had no concerns about leaving her daughters alone with defendant. This fact supported defendant's theory that the victim was lying at her mother's request as revenge for defendant leaving her mother. Defense counsel chose to introduce this character evidence to support the defense, taking the risk that the prosecutor could introduce defendant's unarmed robbery conviction. Defense counsel's decision in this regard was a matter of trial strategy. *Horn*, 279 Mich. App. at 39. Defense counsel's representation did not fall below an objective standard of reasonableness. *Toma*, 462 Mich. at 302. Further, defendant cannot demonstrate that, but for any alleged error by counsel with respect to questioning Bragg, the outcome of trial would have been different. *Id*. The testimony about the unarmed robbery was brief, the evidence was minimally prejudicial, and the case was not a mere credibility contest between defendant and the victim.

*Robinson*, 2013 WL 3814352 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Trial counsel reasonably decided to elicit testimony from Braggs that she was comfortable leaving her daughters alone with Petitioner in an effort to support the defense claim that Petitioner was not a threat to underage girls and the victim was lying about the assaults. While such character testimony opened the door to the disclosure of Petitioner's unarmed robbery conviction, counsel may have

reasonably decided that the benefit outweighed the cost, particularly since unarmed robbery is not akin to criminal sexual assault and the character testimony was strong and relevant to the charges in this case. This was a matter of trial strategy which will not be second-guessed on habeas review. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to impeach the victim with her police statement and preliminary examination testimony, for failing to impeach the victim's friend with her police statement, and for failing to point out inconsistencies between the victim's and her brother's version of events. Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on these claims finding that Petitioner failed to support his allegations and/or that counsel's actions were matters of trial strategy. The court explained in relevant part:

> Defendant asserts that defense counsel was ineffective because she failed to impeach the victim and her friend with their statements to police. However, the police reports to which defendant refers are not a part of the record and, therefore, no mistake is apparent from the

record. *Id.*

Defendant argues that counsel should have impeached the victim with her preliminary examination testimony. The victim testified at the preliminary examination that, during one incident, she talked on the telephone with a friend, she smoked marijuana with defendant, and then defendant performed oral sex on her. At trial, the victim testified that she smoked marijuana with defendant, then talked on the telephone with a friend, and then defendant performed oral sex on her. Defendant argues that counsel should have impeached the victim with her different timeline. Defense counsel successfully cross-examined the victim regarding her history of dishonesty with her mother, why the victim never tried to wake up a nearby friend during the incident in the upstairs bedroom, and why it took the victim so long to report the abuse. Because defense counsel chose to cross-examine the victim about other important issues, she may have chosen not to focus on a small discrepancy in the order of events. Defendant has failed to rebut the presumption that defense counsel's decision was a matter of trial strategy. *Horn*, 279 Mich. App. at 39.

Defendant claims that defense counsel was ineffective because she failed to emphasize in her closing argument an inconsistency in the testimony of the victim and her brother. At trial, the victim testified that, after defendant assaulted her in the apartment, defendant let her get up to let her brothers into the apartment. The victim's brother testified about an incident when he was locked out of the apartment for two or three minutes before defendant let him inside. Defendant cannot demonstrate that counsel was ineffective in failing to point out this minor discrepancy during closing argument. "A decision concerning what evidence to highlight during closing argument" is a matter of trial strategy. *Horn*, 279 Mich. App. at 39.

*Robinson*, 2013 WL 3814352 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record indicates

that counsel contested the testimony of the victim and the other prosecution witnesses at trial. While counsel did not point out some inconsistencies among those statements and testimony, she may have reasonably determined that they were minor and not worth pursuing in an effort to focus on larger credibility issues, such as TJ's troubles with her mother arising from her lies and improper behavior, *see* 4/19/11 Trial Tr., pp. 75-81, IT's inability to recall dates and times, *id.* at 47-48, whether IT might have been mistaken about seeing Petitioner (as opposed to the victim's brother or cousin) in the bedroom doorway, *id.* at 50-51, and the fact that TJ did not say anything about Petitioner that night or the next day. *Id.* at 55-56. Additionally, counsel may have reasonably decided not to impeach IT's testimony that she and TJ were in the same bed with IT's police statement that they were in separate beds because the jury might find it hard to believe that Petitioner would assault TJ while she was in the same bed as IT and that IT would not realize what was happening at the time. Counsel's strategy, in fact, is reflected in her closing argument. *See* 4/20/11 Trial Tr. pp. 97-99. Moreover, the cross-examination of witnesses is generally a matter of trial strategy left to the professional discretion of counsel. *See Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (stating that "most cross-examinations can be improved but if that were the standard of constitutional effectiveness, few would

be the counsel whose performance pass muster" and citing cases).

Similarly, counsel may have reasonably decided not to discuss the discrepancy in TJ's and CJ's testimony over who opened the door to the locked apartment in an effort to focus on the fact that CJ did not notice anything unusual that day and that TJ was doing the same thing when he went outside and when he returned. *See* 4/20/11 Trial Tr., p. 99. Petitioner fails to overcome the presumption that counsel's conduct was sound trial strategy. He also fails to show that additional impeachment/argument as to these matters would have affected the outcome or that he was otherwise prejudiced by counsel's conduct. Petitioner fails to establish that counsel was ineffective.

Petitioner next asserts that trial counsel was ineffective for failing to investigate whether the victim had a negative drug test during March or April, 2009 to refute her testimony that she smoked marijuana with Petitioner the day before he assaulted her in March, 2009. The Michigan Court of Appeals denied relief on this claim finding that Petitioner provided "no proof" that counsel failed to investigate such a test and failed to establish the factual predicate for this claim. *Robinson*, 2013 WL 3814352 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner fails

to substantiate his claim that counsel did not investigate this issue. Second, and more importantly, he cannot establish prejudice by any failure to investigate. TJ testified that Petitioner's second assault occurred in March or May of 2009, *see* 4/19/11 Trial Tr., pp. 68-72, but the court order requiring TJ to submit to drug testing was not signed until July 20, 2009 (following the June 30, 2009 hearing). *See* Court Order, Pet. Attach. P. Consequently, any investigation by counsel into drug testing results would not have uncovered evidence relevant to the case. Petitioner provides no drug testing results in support of this claim. As noted, conclusory allegations are insufficient to warrant habeas relief. Petitioner fails to establish that counsel was ineffective in this regard.

Petitioner also asserts that trial counsel was ineffective for failing to object when the prosecutor asked Calandra Jones an open-ended question about their living situation and she responded that Petitioner was incarcerated for a period of time. The Michigan Court of Appeals denied relief on this claim stating:

> Defendant argues that counsel should have objected when the prosecutor asked the victim's mother an open-ended question, which led to testimony that defendant was previously incarcerated. Defendant's argument that the prosecutor's question was per se objectionable solely because it called for a narrative answer is meritless. *See People v. Wilson*, 119 Mich. App. 606, 616–617; 326 NW2d 576 (1982) (recognizing that "[t]he mode and order of interrogation of witnesses is governed by MRE 611" and that "[n]othing in the rule specifically precludes testimony because of its narrative form"). Defendant has not shown that counsel's

performance fell below an objective standard of reasonableness. *Toma*, 462 Mich. at 302. Likewise, we reject defendant's argument that counsel should have objected to testimony elicited by the open-ended question. "[T]here are times when it is better not to object and draw attention to an improper comment." *People v. Unger*, 278 Mich. App. 210, 242; 749 NW2d 272 (2008) (quotation omitted).

*Robinson*, 2013 WL 3814352 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the prosecutor's open-ended question was proper under state evidentiary rules and there was no reason to anticipate that the witness would volunteer the incarceration information such that counsel had no basis for objection. Counsel cannot be deemed deficient for failing to make a futile or meritless objection or motion. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Second, once the witness answered, counsel may have decided not to object in order to avoid drawing additional attention to the matter. Such conduct was reasonable under the circumstances. Petitioner fails to establish that counsel was ineffective.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to investigate Rosa Robinson and then asking her whether Petitioner had been in legal trouble, which led her to mentioning an aggravated assault. The Michigan

Court of Appeals denied relief on this claim finding that "there is no indication in the record" that counsel failed to investigate the witness such that Petitioner failed to establish the factual predicate for his claim and concluding that counsel was not ineffective for failing to object to the testimony. *Robinson*, 2013 WL 3814352 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to offer any evidence detailing the extent of counsel's investigation of Rosa Robinson or to allege any facts to show what counsel did or did not investigate before trial. As noted, conclusory allegations are insufficient to warrant habeas relief. Additionally, as with the other reference to Petitioner's criminal history, counsel may have decided not to object to the testimony or request that it be stricken in order to avoid drawing attention to the matter. Such conduct was reasonable given that the reference was brief and involved a completely different and unrelated offense. Moreover, even if counsel erred in some fashion, Petitioner fails to establish that he was prejudiced by counsel's conduct. The references to Petitioner's criminal history were brief and did not involve any crimes similar to the charged offenses. The trial court also instructed the jury about the elements of the charged offenses and the proper consideration of the evidence. Jurors are

presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### D. Exclusion of Evidence (Habeas Claim VI)

Petitioner next asserts that he is entitled to habeas relief because the trial court allowed the prosecution to present evidence that Calandra Jones and Petitioner discussed sending TJ to a juvenile boot camp, but then excluded evidence about why they considered doing so. Respondent contends that this claim lacks merit.

As noted, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo*, 365 F.3d at 494 (quoting *McGuire*, 502 U.S. at 69-70);

*see also Wynne*, 606 F.3d at 871) (citing *Bey*, 500 F.3d at 519-20); *Bugh*, 329 F.3d at 512.

The Michigan Court of Appeals denied relief on this claim. The court explained:

> At trial, the victim testified that some time after the two incidents of abuse occurred, she overheard her mother and defendant discussing the possibility of sending her to juvenile boot camp. The victim grew angry with both her mother and defendant, and told her mother about the incidents of abuse. During cross-examination, defense counsel asked the victim if she knew "why boot camp was being discussed...?" The prosecutor objected on relevance grounds, and the trial court sustained the objection. Defendant contends that, if the victim had been allowed to testify, she would have testified that she smoked marijuana in violation of her probation. We hold that this evidence was irrelevant. MRE 401.

> The record reveals that defendant raised the possibility of boot camp and that the victim's mother agreed with the idea. Thus, absent the specific reason, the relevant fact at issue—the victim's motive to lie—was placed squarely before the jury. Any testimony about the alleged reason for boot camp would not add to any additional motivation for the victim to lie about her allegations of abuse. Accordingly, although this was a close evidentiary issue, the trial court did not abuse its discretion in excluding the evidence because a decision on a close evidentiary question ordinarily cannot be an abuse of discretion.

*Robinson*, 2013 WL 3814352 at *5.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred under Michigan law, he

merely alleges a violation of state law which does not justify federal habeas relief. *See, e.g., Bey*, 500 F.3d at 519. As discussed, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish a federal due process violation. The evidence was not particularly relevant and the jury was well aware that TJ was upset about the threat of being sent to a juvenile boot camp regardless of the reason for it. Moreover, the jury was also well aware of the fact that TJ had smoked marijuana and had been in trouble for lying and skipping school based upon TJ's own testimony. *See* 4/19/11 Trial Tr., pp. 70-71, 75-76. The defense thus had a sufficient opportunity to challenge TJ's motivations and credibility based upon the evidence presented at trial. Petitioner was not denied the ability to present his defense. He fails to show that the trial court erred and/or that the trial court's ruling deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

### E.    Jury View of Handcuffs/Shackles (Habeas Claims VII, VIII)

Lastly, Petitioner asserts that he is entitled to habeas relief because the jury

viewed him in handcuffs/shackles during the jury instructions at trial and, relatedly, that the trial court's factual findings concerning this issue were clearly erroneous and not in keeping with the appellate court remand. Respondent contends that the handcuffs/shackles claim is procedurally defaulted and that both claims lack merit.

It is well-settled that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (citing *Lambrix*, 520 U.S. at 525). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issue is intertwined with the substantive issues and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of these claims.

Generally, a criminal defendant "should not be compelled to go to trial in prison or jail clothing because of the possible impairment" of the presumption of

innocence guaranteed by the due process right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 504 (1976). This principle extends to a defendant's appearance in handcuffs and shackles. *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000). Due process precludes the use of visible physical restraints upon a defendant "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005) (citing *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986); *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970)). Handcuffs or shackles on a defendant are permitted to prevent the escape of the accused, to protect people in the courtroom, and to maintain order during the trial. *See Kennedy v. Cardwell*, 487 F.2d 101, 110-111 (6th Cir. 1973). Exposure of the jury to a defendant in handcuffs or shackles requires a mistrial only when the exposure is so "inherently prejudicial" as to deny the defendant's constitutional right to a fair trial. *See Waldon*, 206 F.3d at 607.

Citing *Deck* and relevant state law, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> At the evidentiary hearing, the parties agreed that defendant wore a remotely activated custody and control belt (RACC belt), which would give defendant a mild shock if he disrupted the trial. Defendant had threatened his trial counsel and it appears that the belt was necessary for defense counsel's safety. However, the trial court had not made a finding on the record that shackling was necessary to

prevent injury. *Dunn*, 446 Mich. at 425. Importantly however, defendant wore the belt under his shirt and both a deputy and the prosecutor testified that the belt was not visible during trial. Thus, defendant is not entitled to a new trial because he has not shown he was prejudiced because he wore a RACC belt during the trial. *Carines*, 460 Mich. at 763; *Horn*, 279 Mich. App. at 36.

The primary issue at the evidentiary hearing was whether defendant wore handcuffs in front of the jury. Defendant testified that he wore handcuffs in front of the jury during the jury instructions, that he told defense counsel about the handcuffs, and that defense counsel briefly discussed the handcuff situation with the trial court. One of defendant's sisters, Rosa Robinson, testified that she saw defendant wearing handcuffs during jury instructions, but she also said that defense counsel did not raise the issue with the trial court. Another of defendant's sisters, Lucille Edelen, testified that after jury instructions, she saw defendant's hands clasped in front of him as he left the courtroom, causing Edelen to infer that defendant was wearing handcuffs. Edelen also said that defense counsel did not say anything to the trial court about the restraints. Rosa and Edelen's testimony conflicted with defendant's testimony that defense counsel raised the issue of the handcuffs with the trial court. Also, Rosa's testimony conflicted with a statement in an affidavit that defense counsel raised the matter with the trial court. Moreover, despite the fact that Rosa and Edelen sat next to each other in court, their testimony differed about whether the handcuffs were visible. Defense counsel testified that she did not believe that defendant wore handcuffs during the course of the trial and did not remember bringing the issue to the trial court's attention. Further, two deputies testified that, based on the trial court's standard practices, defendant would not have been in handcuffs in front of jurors, and a deputy testified that she did not remember bringing defendant into the courtroom wearing handcuffs.

The trial court had to make a credibility determination about the conflicting witness testimony. The court ruled that the evidence did not support a finding that defendant was in handcuffs in front of the jury. If the "resolution of a disputed factual question turns on the

credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters." *People v. Sexton* (After Remand), 461 Mich. 746, 752; 609 NW2d 822 (2000). The trial court did not clearly err in finding that defendant was not handcuffed in front of the jury. *People v. Buie*, 491 Mich. 294, 304; 817 NW2d 33 (2012). Thus, defendant has not shown error, no[r] that the court violated his constitutional rights. *Carines*, 460 Mich. at 764; *Deck*, 544 U.S. at 629; *Dunn*, 446 Mich. at 425-426.

*Robinson*, 2013 WL 3814352 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the use of the RACC belt was justified by Petitioner's threats to harm defense counsel and was worn under his clothes so as not to be visible to the jury during trial. Second, the testimony from defense counsel and the two courtroom deputies supported the trial court's determination that Petitioner was not in handcuffs in front of the jury. While Petitioner offered testimony from himself and his sisters in support of his claim, the trial court had reason to doubt their credibility given the inconsistencies in their accounts and the fact that nothing in the trial record supports Petitioner's assertion that defense counsel objected at trial. Moreover, it is the job of the state trial court, not this Court on habeas review, to resolve such conflicts. The state courts' factual determinations are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1), and Petitioner has not rebutted this presumption with clear and

convincing evidence.

Additionally, to the extent that Petitioner asserts that the trial court failed to follow the dictates of the appellate court's remand order or otherwise erred in conducting the evidentiary hearing under state law, he fails to state a claim upon which relief may be granted. As previously discussed, perceived violations of state law do not provide a basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Furthermore, even assuming that an error occurred, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993): *see also Fry v. Pliler*, 551 U.S. 112, 117–18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). Harmless error analysis has been applied to claims involving the use of prison clothing and shackles. *See, e.g., Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005) (citing Supreme Court

cases). While the use of the RACC belt was justified by Petitioner's threats to counsel, even if it was not, the record indicates that the belt was not visible to the jury such that it could not have affected the verdict. Even if the jury briefly viewed Petitioner in handcuffs during the jury instructions, such action did not have a substantial effect or influence on the jury's verdict. Petitioner concedes that the jury knew that he had a criminal history and had been incarcerated and that he wore prison greens during trial. *See* Pet. Br. p. 60 (citing the record). Seeing him in handcuffs for a brief period of time would not have been surprising under such circumstances. Moreover, the prosecution presented significant evidence of guilt, particularly the victim's testimony and the corroborating testimony from her friend and her brother. Habeas relief is not warranted on these claims.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller v. Cockrell*, 537 U.S. 322, 327 (2003). Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court also **DENIES** Petitioner leave to proceed in forma pauperis on appeal as an appeal cannot be take in good faith. *See* Fed. R. App. P. 24(a). This case is closed.

**IT IS SO ORDERED**.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: November 3, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 3, 2017.

s/Deborah Tofil
Case Manager